[DO NOT PUBLISH]

# In the
# United States Court of Appeals
## For the Eleventh Circuit

_____

No. 23-12551

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

                                     Plaintiff-Appellee,

*versus*

DAVID ROBINSON, JR.,

                                     Defendant-Appellant.

_____

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 5:22-cr-00072-GAP-PRL-1

_____

Before JORDAN, BRASHER, and ABUDU, Circuit Judges.

PER CURIAM:

David Robinson, Jr., appeals his conviction for possession of an unregistered short-barreled rifle, 26 U.S.C. §§ 5861(d). On appeal, he argues that his statute of conviction violates the Second Amendment in light of *New York State Rifle & Pistol Association v. Bruen*, 597 U.S. 1 (2022), and that the National Firearms Act ("NFA"), 26 U.S.C. § 5801, *et seq.*, is an unconstitutional tax on the exercise of a constitutional right and exceeds Congress's power under the Tenth Amendment. Finding no error—and bound by the precedent of the Supreme Court—we affirm.

## I. FACTUAL BACKGROUND & PROCEDURAL HISTORY

In October 2022, a federal grand jury returned an indictment charging Robinson with knowing possession of an unregistered rifle with a barrel less than 16 inches in length ("short-barreled rifle"), in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871.

Robinson moved to dismiss the indictment, arguing that the NFA was unconstitutional because it: (i) violates the Second Amendment under *Bruen*; (ii) exceeds Congress's taxing authority in violation of the Tenth Amendment; and (iii) is an unconstitutional fee or tax on the Second Amendment right to keep and bear arms. After full briefing, the district court denied the motion to dismiss. For reasons we address further below, the district court concluded that the Second Amendment does not guarantee the right to keep and bear an unregistered short-barreled shotgun, and it found no meaningful distinction between short-barreled

shotguns and short-barreled rifles. The court also rejected Robinson's Tenth Amendment challenge as foreclosed by precedent and concluded that Robinson's unconstitutional fee or tax argument was misplaced.

Robinson consented to a bench trial and stipulated to the following facts. On September 9, 2022, law enforcement responded to a complaint of a suspicious vehicle parked in front of a house in Citrus County, Florida. When officers arrived, they observed Robinson, who appeared to be asleep, in the driver's seat and the butt stock of a rifle next to him. Officers used a flashlight to view the inside of the car, waking up Robinson. Officers ordered Robinson to place his hands on the car's steering wheel, but rather than complying, Robinson drove away. Still, once officers activated their emergency lights, Robinson stopped his car and was detained. Officers recovered a loaded short-barreled rifle and a separate upper assembly for a rifle with a sixteen-inch barrel from the rifle. After officers gave him *Miranda* warnings, Robinson explained that he had bought the rifle in Tampa, Florida, and that he did not know that he had to register the rifle. A search of the National Firearms Registration and Transfer Record ("NFRTR") revealed that the rifle was not registered to Robinson. The barrel was measured by law enforcement to be approximately 12.5 inches long, and Robinson admitted that he knew that the barrel was less than 16 inches long.

After the bench trial, the district court found Robinson guilty. It later imposed a sentence of 18 months' probation, with six months served on home confinement.[1] Robinson appealed.

## II. STANDARDS OF REVIEW

We review the constitutionality of a statute *de novo*. *United States v. Pugh*, 90 F.4th 1318, 1324 (11th Cir.) (citing *United States v. Knight*, 490 F.3d 1268, 1270 (11th Cir. 2007)), *cert. denied*, 145 S. Ct. 236 (2024) (mem.). Two relevant constraints are placed on our review here, however.

First, we "must follow Supreme Court precedent that has 'direct application' in a case, even if it appears that the reasoning of the Supreme Court precedent has been rejected in other cases." *Motorcity Ltd. ex rel. Motorcity, Inc. v. Se. Bank N.A.*, 120 F.3d 1140, 1143 (11th Cir. 1997) (*en banc*) (quoting *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989)). "Only the Supreme Court has 'the prerogative of overruling its own decisions.'" *Id.* (quoting *Rodriguez De Quijas*, 490 U.S. at 484); *see also State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997); *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1, 18 (2000) ("[The Supreme Court] does not normally overturn, or . . . dramatically limit, earlier authority *sub silentio*.").

Second, under our prior panel precedent rule, we are bound to follow our own prior binding precedent until it is overruled by the Supreme Court or this Court sitting *en banc*. *United States v.*

---

[1] On appeal, Robinson does not challenge his sentence.

23-12551               Opinion of the Court                          5

*White*, 837 F.3d 1225, 1228 (11th Cir. 2016); *United States v. Lee*, 886 F.3d 1161, 1163 n.3 (11th Cir. 2018). "To constitute an 'overruling' for the purposes of this prior panel precedent rule, the Supreme Court decision 'must be clearly on point.'" *United States v. Kaley*, 579 F.3d 1246, 1255 (11th Cir. 2009) (quoting *Garrett v. Univ. of Ala. at Birmingham Bd. of Trs.*, 344 F.3d 1288, 1292 (11th Cir. 2003)). "Even if the reasoning of an intervening high court decision is at odds with a prior appellate court decision, that does not provide the appellate court with a basis for departing from its prior decision." *United States v. Vega-Castillo*, 540 F.3d 1235, 1237 (11th Cir. 2008). In order to abrogate one of our precedents, a "later Supreme Court decision must 'demolish' and 'eviscerate' each of its 'fundamental props.'" *Del Castillo v. Sec'y, Fla. Dep't of Health*, 26 F.4th 1214, 1223 (11th Cir. 2022) (alterations adopted) (quoting *United States v. Petite*, 703 F.3d 1290, 1297-98 (11th Cir. 2013)). Accordingly, if this Court's precedent relied on "a line of Supreme Court precedents that the [Supreme] Court itself emphasizes in a later decision is not implicated by that later decision," the Supreme Court's "later decision cannot have" abrogated our precedent. *Id.* That said, however, the Supreme Court does not have to directly cite our precedent to abrogate it. *See Santiago-Lugo v. Warden*, 785 F.3d 467, 471-74 (11th Cir. 2015).

### III. ANALYSIS

On appeal, Robinson reiterates the contentions he raised in his motion to dismiss. We address, and reject, each in turn.

### A. The NFA's regulation of short-barreled rifles does not violate the Second Amendment

First, Robinson argues that the NFA violates the Second Amendment under *Bruen*. Robinson contends that the possession of a short-barrel rifle is presumptively protected by the Second Amendment, and constitutes "keeping or bearing arms." Specifically, he contends that short-barrel rifles are bearable arms that are "in common use" and are "typically possessed by law-abiding citizens for lawful purposes" because there is a large number of them in circulation and they are rarely used to commit crimes. He argues that *United States v. Miller*, 307 U.S. 174 (1939), does not compel a different conclusion because: (1) it is "unclear" whether *Miller*'s discussion on this issue "still holds" in light of intervening Supreme Court precedent; and (2) *Miller* involved a short-barrel *shotgun*, not a short-barrel *rifle*. Finally, Robinson contends that the government cannot show a historical tradition of requiring pre-possession registration of short-barrel rifles and that the NFA is like the unconstitutional New York licensing regime in *Bruen*.

In response, the government contends that precedent from this Court and the Supreme Court foreclose Robinson's argument on this issue. It also argues that, even if precedent does not foreclose Robinson's argument, the NFA's requirements for possessing a short-barreled rifle satisfy *Bruen*'s test and are constitutional under the Second Amendment.

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the

people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. Section 5861(d) of Title 26 makes it unlawful for any person "to receive or possess a firearm that is not registered to" them in the NFRTR. 26 U.S.C. § 5861(d). The NFA defines "firearm" for the purpose of the provision as:

> (1) a shotgun having a barrel or barrels of less than 18 inches in length; (2) a weapon made from a shotgun if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 18 inches in length; (3) a rifle having a barrel or barrels of less than 16 inches in length; (4) a weapon made from a rifle if such weapon as modified has an overall length of less than 26 inches or a barrel or barrels of less than 16 inches in length; (5) any other weapon, as defined in subsection (e); (6) a machinegun; (7) any silencer . . . ; and (8) a destructive device.

*Id*. § 5845(a). The NFA also defines "rifle" and "shotgun." *Id*. § 5845(c), (d).

In *Miller*, the Supreme Court considered a Second Amendment challenge to the NFA brought by defendants indicted for transporting an unregistered short-barreled shotgun. 307 U.S. at 175. In rejecting the challenge, the Supreme Court held that, absent "any evidence tending to show that possession or use of a [short-barreled shotgun] at this time has some reasonable relationship to the preservation or efficiency of a well regulated militia, [it could not] say that the Second Amendment guarantees the right to keep and bear such an instrument." *Id*. at 178. The Court also

| 8 | Opinion of the Court | 23-12551 |

rejected "the objection that the [NFA] usurps police power reserved to the States," finding it "plainly untenable." *Id.*[2]

Nearly 70 years later, the Supreme Court struck down the District of Columbia's ban on the possession of usable handguns in *District of Columbia v. Heller*, 554 U.S. 570 (2008). In doing so, it "concluded, for the first time, that the Second Amendment guarantees an individual right to possess weapons unconnected with militia service." *United States v. Tagg*, 572 F.3d 1320, 1326 (11th Cir. 2009) (citing *Heller*, 554 U.S. at 573-619). Consequently, the Supreme Court displaced contrary circuit precedent which had rejected a similar argument. *See, e.g.*, *United States v. Wright*, 117 F.3d 1265, 1271-74 (11th Cir. 1997), *overruled in part by Heller*, 554 U.S. at 573-619. "The [*Heller*] Court emphasized, however, that the 'right secured by the Second Amendment is not unlimited,' and one 'important limitation' came from the Court's previous opinion in *Miller*." *Tagg*, 572 F.3d at 1326 (citing *Heller*, 554 U.S. at 626-27). Thus, the Supreme Court did not overrule *Miller* in *Heller*. *Id.*; *see also Heller*, 554 U.S. at 626-27.

In 2009, after *Heller*, we upheld a conviction under the NFA—for aiding and abetting the unlawful possession of unregistered pipe bombs—citing to and relying on *Miller*. *See Tagg*,

---

[2] Subsequently, the former Fifth Circuit rejected several constitutional challenges to the NFA on similar grounds, relying on *Miller*. *See United States v. Johnson*, 441 F.2d 1134, 1136 (5th Cir. 1971); *United States v. Williams*, 446 F.2d 486, 487 (5th Cir. 1971); *see also Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (*en banc*) (holding that all Fifth Circuit decisions issued by the close of business on September 30, 1981, are binding precedent in this Court).

572 F.3d at 1323-27. In 2020, we again considered whether the NFA exceeded Congress's taxing power and, therefore, violated the Tenth Amendment both facially and as applied. *United States v. Bolatete*, 977 F.3d 1022, 1031-36 (11th Cir. 2020). We held that precedent squarely upheld the constitutionality of the NFA as a valid exercise of Congress's taxing power because, facially, Section 5861(d) was an enforcement mechanism of a transfer-tax provision meant to discourage a transferor from transferring an unregistered firearm without paying the tax. *Id.* at 1033 (citing *United States v. Ross*, 458 F.2d 1144, 1145 (5th Cir. 1972)). We also held that, as applied, Section 5861(d) was a valid regulation aiding a revenue-raising purpose even though it punished transferees who had no obligation or opportunity to pay the transfer tax. *Id.* Then, under plain-error review, we held that the Supreme Court's fee jurisprudence cases did not establish plain error because neither the Supreme Court nor this Court had applied those cases to the Second Amendment. *Id.* at 1035–36.

In *United States v. Wilson*, we again rejected a defendant's Second and Tenth Amendment challenges to the NFA. 979 F.3d 889, 903 (11th Cir. 2020). There, we explained that "the Supreme Court [had] squarely rejected Wilson's constitutional argument over 80 years ago" in *Miller* when it held that the "'Tenth Amendment objection that the National Firearms Act usurps police power reserved to the States is plainly untenable' and 'we cannot say that the Second Amendment guarantees the right to keep and bear' an unregistered sawed-off 'shotgun having a barrel of less than eighteen inches in length.'" *Id.* (alterations adopted) (quoting *Miller*,

307 U.S. at 175-78). We also noted that our previous holding in *Bolatete* supported the same conclusion: that the NFA is constitutional as an exercise of the taxing power. *Id.*

Subsequently, in *Bruen*, the Supreme Court addressed a challenge to New York's gun-licensing regime. 597 U.S. at 10-12. New York's statutory scheme prohibited citizens from obtaining a license to carry firearms outside their home unless they proved "a special need for self-defense." *Id.* at 11. The Supreme Court ruled New York's regime unconstitutional because "the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home.'" *Bruen*, 597 U.S. at 10. *Bruen* also rejected the second step of "a two-step test that then prevailed in most circuits" for analyzing Second Amendment challenges. *See Bruen*, 597 U.S. at 15-25.[3] Instead, the Supreme Court explained, the proper standard for assessing whether a challenged firearm regulation is:

> When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct. The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation. Only then may a court conclude that

---

[3] We had "never actually applied the second, means-end-scrutiny step" of this now-overruled two-step test. *See United States v. Dubois*, 94 F.4th 1284, 1292 (11th Cir. 2024) (citing *United States v. Jimenez-Shilon*, 34 F.4th 1042, 1052-53 (11th Cir. 2022) (Newsom, J., concurring)), *vacated*, __U.S. __, 2025 WL 76413 (2025) (mem.).

the individual's conduct falls outside the Second Amendment's "unqualified command."

*Bruen*, 597 U.S. at 24 (quoting *Konigsberg v. State Bar of Cal.*, 366 U.S. 36, 50 n.10 (1961)).

Even so, *Bruen*—like *Heller*—did not overturn all prior caselaw addressing the Second Amendment. *See, e.g., United States v. Rahimi*, 602 U.S. 680, 692-700 (2024). More importantly, the *Bruen* majority also did not pass on—let alone criticize—*Miller*. *See generally Bruen*, 597 U.S. at 8-71.[4]

In *Rahimi*, decided after Robinson filed this appeal, the Supreme Court held that § 922(g)(8)—which prohibits firearm possession by individuals subject to a domestic violence restraining order—was constitutional because the provision comported with the principles underlying the Second Amendment. 602 U.S. at 692-700. In reaching that conclusion, the Supreme Court explained that "some courts [had] misunderstood the methodology" of its "recent Second Amendment cases." *Id.* at 691. It clarified that *Bruen* does not require a regulation to have existed at the founding in an identical form: instead, "[t]he law must comport with the principles underlying the Second Amendment, but it need not be a 'dead ringer'

---

[4] Two members of the *Bruen* majority—Justice Kavanaugh, joined by Chief Judge Roberts—wrote separately to reiterate that "[p]roperly interpreted, the Second Amendment allows a 'variety' of gun regulations." *Bruen*, 597 U.S. at 79-81 (Kavanaugh, J. concurring). In making this point, Justice Kavanaugh's opinion quoted *Heller*'s discussion of *Miller* as an "important limitation." *Id.* at 81 (quoting *Heller*, 554 U.S. at 626-27).

or a 'historical twin.'" *Id.* at 692 (quoting *Bruen*, 597 U.S. at 30). The Supreme Court also reiterated that prohibitions on felons' possession of firearms are "presumptively lawful." *Id.* at 699 (quoting *Heller*, 554 U.S. at 626-27). It added that, in *Heller*, it had "recognized that the right [secured by the Second Amendment] was never thought to sweep indiscriminately." *Id.* at 691.

Here, we conclude that *Miller* remains binding as the Supreme Court has not overturned it. *Motorcity Ltd.*, 120 F.3d at 1143; *Khan*, 522 U.S. at 20. As a lower federal court, we must leave it to the Supreme Court to overturn its own precedent and to limit its own precedent's applicability. *Shalala*, 529 U.S. at 18. As shown by the history laid out above, the Court has yet to overturn or limit *Miller*. *Tagg*, 572 F.3d at 1326; *Heller*, 554 U.S. at 626-27. Accordingly, the NFA's registration requirement for short-barreled shotguns is constitutional, *Miller*, 307 U.S. at 175-78, and our precedent upholding the NFA against Second Amendment challenges and relying on *Miller*—such as *Tagg*, *Bolatete*, and *Wilson*—remains binding. *See Kaley*, 579 F.3d at 1255; *Vega-Castillo*, 540 F.3d at 1237; *Del Castillo*, 26 F.4th at 1223.

Given that the NFA's regulation of short-barreled shotguns is constitutional under *Miller*, we turn to whether the NFA's similar regulation of short-barreled rifles is similarly permissible under the Second Amendment. The district court explained that, in its view, there was "no meaningful distinction" between short-barreled rifles and short-barreled shotguns. Other courts have reached the same conclusion. *See United States v. Cox*, 906 F.3d 1170, 1186 (10th

Cir. 2018) (concluding that a defendant had not showed a "meaningful distinction between the two" types of firearm); *United States v. Stepp-Zafft*, 733 F. App'x 327, 329 (8th Cir. 2018) (unpublished) (collecting cases). In our own caselaw, we have discussed the dangerousness of firearms covered by the NFA together, without drawing the distinction Robinson now asks us to draw. *See United States v. McGill*, 618 F.3d 1273, 1277-78 (11th Cir. 2010) ("[W]e recognize that there is a 'reasonable—indeed, very substantial—difference between possession of a generic "firearm" and possession of one of the specialized weapons singled-out for particularized treatment by the NFA.'" (alterations adopted) (quoting *United States v. Fortes*, 141 F.3d 1, 7 (1st Cir. 1998)). The Supreme Court has done the same. *See, e.g.*, *United States v. Thompson/Ctr. Arms Co.*, 504 U.S. 505, 517 (1992) (plurality opinion) ("It is of course clear from the face of the Act that the NFA's object was to regulate certain weapons likely to be used for criminal purposes, just as the regulation of short-barreled rifles, for example, addresses a concealable weapon likely to be so used."). *Cf. United States v. Jennings*, 195 F.3d 795, 799 n.4 (5th Cir. 1999) (concluding that "short-barreled shotguns[] and short-barreled rifles are primarily weapons of war and have no appropriate sporting use or use for personal protection" (quoting S. Rep. No. 90-1501, at 28 (1968))).

Indeed, Robinson cites no cases treating these two types of short-barreled firearms—regulated in neighboring subsections within the NFA—differently. *See* 26 U.S.C. § 5845(a), (c), (d). Bound by the logic of *Miller* and *Wilson*—and given Robinson's failure to present a distinction—we reach the same conclusion as the

district court. *Cf. Rahimi*, 602 U.S. at 692 (explaining that a regulation on firearms "must comport with the principles underlying the Second Amendment, but it need not be a 'dead ringer' or a 'historical twin'" (quoting *Bruen*, 597 U.S. at 30)). A successful Second Amendment challenge to the NFA must distinguish itself from the challenge the Supreme Court rejected in *Miller*. *See id.*; *see also Murphy v. St. Paul Fire & Marine Ins. Co.*, 314 F.2d 30, 31 (5th Cir. 1963) (explaining that an appellant must show error); *Vetter v. Frosch*, 599 F.2d 630, 633 (5th Cir. 1979) (similar). Here, Robinson has not established how the distinctions between short-barreled rifles and short-barreled shotguns present a relevant and material difference that would make one regulation constitutional and the other not.

We also disagree with Robinson's contention that the NFA is akin to the licensing scheme found unconstitutional in *Bruen*. The NFA does not "require applicants to show an atypical need for armed self-defense" so they do not implicate the same concerns present in *Bruen*. *Compare Bruen*, 597 U.S. at 38 n.9 (distinguishing may-issue gun control licensing regimes from shall-issue licensing regimes), *with* 26 U.S.C. § 5812 ("Applications shall be denied if the transfer, receipt, or possession of the firearm would place the transferee in violation of law.").

Therefore, we affirm the district court's order on this issue.

B. *The NFA is not an unconstitutional tax on the exercise of a constitutional right*

Robinson also argues that the NFA is an unconstitutional tax on the exercise of a constitutional right. Although he concedes that

neither this Court or the Supreme Court has applied "fee jurisprudence" principles, as set forth in *Cox v. New Hampshire*, 312 U.S. 569 (1941), and *Murdock v. Pennsylvania*, 319 U.S. 105 (1943), to the Second Amendment, he points to two other circuits that had done so pre-*Bruen*: *Heller v. District of Columbia*, 801 F.3d 264, 278 (D.C. Cir. 2015); *Kwong v. Bloomberg*, 723 F.3d 160, 165 (2d Cir. 2013). He urges us to follow these decisions and to conclude that the Second Amendment should be subject to the same body of rules as the other rights in the Bill of Rights, such as the First Amendment.

The government argues that *Bruen* forecloses this application of fee jurisprudence, which sets out the proper framework for analyzing a Second Amendment challenge. We agree.

In *Murdock* and *Cox*, the Supreme Court established the "fee jurisprudence" principles—holding that the government "may not impose a charge for the enjoyment of a right granted by the federal constitution," although it may collect a fee to defray administrative costs associated with the exercise of a constitutional right. *Murdock*, 319 U.S. at 113; *Cox*, 312 U.S. at 576–77. These principles are "most often applied in the First Amendment context." *Bolatete*, 977 F.3d at 1035. The Supreme Court has since explained that these principles embody means-end scrutiny, *i.e.*, "the tax at issue in *Murdock* was invalid because it was unrelated to any legitimate state interest." *Forsyth Cnty. v. Nationalist Movement*, 505 U.S. 123, 137 (1992). In *Bolatete*, we rejected a defendant's argument that *Murdock* and *Cox* applied in the Second Amendment context, albeit under plain-error review, explaining that we "ha[d] not decided

whether it is appropriate to apply the fee jurisprudence of *Murdock* and *Cox* in the context of Second Amendment rights. Nor ha[d] the Supreme Court." *Bolatete*, 977 F.3d at 1035.

Supreme Court precedent now leaves no room for Robinson's argument. As we explained above, in *Bruen*, the Supreme Court set out the framework to be applied to Second Amendment challenges. 597 U.S. at 19, 24. The Court expressly rejected the application of means-end scrutiny in a Second Amendment context—thus, the fee jurisprudence precedent, which is an implementation of means-end scrutiny, conflicts with the established Second Amendment framework. *Id.* at 16-24; *Murdock*, 319 U.S. at 113; *Cox*, 312 U.S. at 576–77; *Forsyth Cnty*, 505 U.S. at 137. Accordingly, we must reject Robinson's argument on this front as well.

C. *The NFA does not exceed Congress's power under the Tenth Amendment*

Finally, Robinson argues that the NFA exceeds Congress's power under the Tenth Amendment. However, he concedes that we rejected an identical argument in *Bolatete*, and he does not contend the Supreme Court has rendered any relevant decision addressing the Tenth Amendment since then. He instead preserves this issue for further appellate review. While we are not bound by a party's concession, *see, e.g.*, *United States v. Lee*, 586 F.3d 859, 866 (11th Cir. 2009), Robinson is correct that *Bolatete* forecloses his argument, *see* 977 F.3d at 1033–34. We, therefore, affirm on this issue as well.

## IV. CONCLUSION

For the reasons we have explained, Robinson has not shown error, so we affirm his conviction.

**AFFIRMED.**